UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD H. STOLP,<br><br>    Petitioner,<br><br>    v.<br><br>JOSIE GASTELO,[1] Warden,<br><br>    Respondent. | No. 1:16-cv-00560-LJO-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently serving a 75-years-to-life sentence in state prison for his conviction of three counts of burglary. He has filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.    PROCEDURAL HISTORY**

On November 16, 2011, Petitioner was found guilty in the Calaveras County Superior Court of three counts of first degree burglary (Cal. Penal Code § 459). (Doc. 1 at 1.[2]) The jury also found true allegations that he had suffered two prior serious or violent felony convictions under California's "Three Strikes" law. (Doc. 1 at 1.) On December 16, 2011, he was sentenced to an indeterminate term of 75-years-to-life. (Doc. 1 at 1.)

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Josie Gastelo, the current Warden of California Men's Colony, is hereby substituted for Kim Holland, the former Warden.
[2] Page references are to ECF pagination.

1

Petitioner appealed to the California Court of Appeal, Third Appellate District ("Third DCA"). The Third DCA affirmed the judgment on January 5, 2015. People v. Stolp, 2015 WL 67037, at *1 (Cal.Ct.App. 2015). On February 6, 2015, Petitioner filed a petition for review in the California Supreme Court. (LD 18.[3]) The petition was denied on March 11, 2015. (LD 19.)

Petitioner filed two petitions for writ of habeas corpus in the Calaveras County Superior Court relevant to the claims presented herein. On March 4, 2016, he filed the first one, and it was denied the same day. (LD 20, 21.) On August 16, 2016, he filed the second one, which was also denied the same day. (LD 22, 23.) On October 17, 2016, he filed a habeas petition in the Third DCA. (LD 24.) The appellate court denied the petition on October 28, 2016. (LD 25.) On March 3, 2017, he filed a habeas petition in the California Supreme Court. (LD 26.) The California Supreme Court denied the petition on April 12, 2017, with citation to In re Robbins, 18 Cal.4th 770, 780 (1998).

On March 15, 2016, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. 1.) The Court stayed the petition pending exhaustion of state remedies. (Doc. 10.) After the stay was lifted, Respondent filed an answer on February 2, 2018. (Doc. 35.) Petitioner did not file a traverse.

## II.     FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Third DCA's unpublished decision[4]:

> Several vacation homes in the Arnold area of Calaveras County were burglarized in late January or early February 2002. Defendant had lived in the area as a child. None of the victims knew defendant or gave him permission to enter their home.
>
> On February 7, 2002, victim David Smith got a phone call from a neighbor saying Smith's home on Murphys Drive had been burglarized. The burglar entered Smith's home through a sliding glass door on the back deck. A rifle, shotgun, ammunition, hunting knives, and a pillowcase were missing. A shotgun had been discharged into a mattress. Smith had last been at the vacation home on January 21, 2002.
>
> On February 11, 2002, Des Martinez received a phone call that her home on Stanislaus Drive had been burglarized. A window pane in the front door was broken, and items were missing. She had last been at the house around noon on February 3, 2002. The count involving Martinez was ultimately dismissed after the

---

[3] "LD" refers to the documents lodged by Respondent with the answer.
[4] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

jury was unable to reach a verdict.

On February 13, 2002, Ronald Peterson learned his home had been burglarized when he went there after receiving a phone bill for calls he did not make, including several "900" numbers, between January 27 and February 3, 2002. He had last been at the house on January 21, 2002. He found the door kicked open. Inside was a mess, with food wrappers, clothing, alcohol bottles, and bullet casings lying around. There were bullet holes in the walls and a burnout spot in the linoleum. Items missing included knives, ammunition, a shotgun, silverware, televisions, VCR, speakers, and a microwave. Defendant's fingerprints were found on bottles and an armrest. Police also found a letter addressed to a Patty Miles, whose Subaru defendant admittedly stole on January 24, 2002. One of the phone calls made from Peterson's home was to defendant's friend Gary Rowe. Peterson's trash cans contained a February 2, 2002, grocery receipt from Big Trees Market; handwritten notes including several "900" numbers; and a receipt for a pizza ordered by "Jerry," defendant's nickname. Surveillance video from the market showed a person who looked like defendant buying the items listed on the receipt found in Peterson's home. A prosecution investigator gave a lay opinion that the handwriting was defendant's. Smith's knives, bag, ammunition, and Smith's shotgun were also found in the Peterson home.

On February 14, 2002, Robert Mugford learned his home had been burglarized when he went there after receiving a phone bill for $1,800, including international calls and calls to 900 numbers, made between February 1st and 3rd, 2002. He found the door kicked in and a window broken. Mugford had last been at the house on January 15, 2002. Missing items included a lamp, clothing, most of the electronics, and a pillowcase. The pillowcase was later found in Peterson's home. DNA from four cigarette butts in Mugford's home matched defendant's DNA profile. Peterson's phone was found in Mugford's house.

The defense called as a witness defendant's friend and former cellmate, Joseph Solar. Defendant stayed at Solar's home for up to a week-and-a-half in January or February 2002, until they had an argument. Defendant later apologized and asked for help cashing a check.

Defendant testified he was paroled on a prior conviction on January 17, 2002. He stayed with Rowe in Grass Valley for a couple of days and then stayed with Solar until their fight. Defendant admitted he stole Miles's Subaru on January 24, 2002. He slept in the car for a few nights and then called Rowe for a place to stay. After talking to Rowe, defendant went to meet a man at a bar. The man led defendant to a house (Peterson's home). A woman was already inside. Defendant did not see any broken windows or doors. Defendant stayed there for three to five days until he obtained his final paycheck from a job he had before he went to prison. Other people came in and out of the house. Defendant did not recall using the house phone but may have. Defendant denied taking anything. He did not recall patronizing the market or restaurant but could not say for sure that he did not, and he acknowledged it looked like him in the market surveillance video. He did not think the handwriting on the papers looked like his handwriting.

Defendant denied ever being in the other victims' homes. He conceded cigarette butts with his DNA were found in the Mugford house but felt "[s]omebody else put them there."

Defendant said Solar helped him cash the paycheck. Defendant then visited Rowe. Rowe's girlfriend, a flight attendant, booked a plane ticket to Virginia for him.

3

Defendant testified his girlfriend in Virginia had wired him money for the ticket. He drove to the Reno airport, where he left Miles's car and caught his flight. He did not know what day this was but said he was "pretty sure" he was gone by February 2, 2002.

Pest control records indicated routine service to the Smith home on February 5, 2002. Pest control technician Louis Alexander testified he serviced the Smith house but had no independent recollection of that day. He did not recall seeing signs of a break-in, but generally he just sprayed the perimeter, sometimes from 30 feet away. Smith had testified there were closed vertical blinds covering the area of broken glass on the upper rear deck where the burglar entered. The upper deck sticks out over the hillside. Smith, who has taken over his own pest control, sprays under the deck where the house meets the ground but does not spray on top of the deck.

A defense handwriting expert opined the handwritten notes had more than one author and perhaps as many as four and were inconsistent with defendant's handwriting. The expert acknowledged some "6's" were consistent with defendant's handwriting, but said everyone's 6's have some similarity.

During deliberations, the jury sent a question to the court, stating it had reached a decision on three counts but wanted to know how to complete the verdict form on Count II (victim Martinez) because the jury was "split 11–1 on the Defendant's guilt. The one has no intention of changing their mind, as well as the 11 will not change."

The jury returned verdicts finding defendant guilty on three of the four burglary counts (victims Smith, Peterson, and Mugford). The jury found true a special allegation that the prosecution commenced within the three-year statute of limitations. The jury found true that defendant had prior convictions for first degree burglary in 1991 and 2001.

The court declared a mistrial on Count II (victim Martinez) and later dismissed it on the People's motion.

In December 2011, the trial court sentenced defendant to three consecutive terms of 25 years to life, for an aggregate term of 75 years to life.

Stolp, 2015 WL 67037, at *1–3.

### III. DISCUSSION

#### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Calaveras County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C.

4

§ 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

    C.    Review of Claims

The petition presents the following four grounds for relief: 1) The eight-year delay between commission of the crimes and arraignment violated Petitioner's due process and speedy trial rights; 2) Appellate counsel rendered ineffective assistance by failing to raise a statute of limitations claim; 3) Petitioner's conviction violated both the state and federal statutes of limitations; and 4) The state court violated the remedial provisions of the Interstate Agreement on Detainers Act ("IAD").

    1.    Due Process and Speedy Trial Rights

a. State Court Background

Petitioner presented this claim to the state courts on direct appeal. In the last reasoned decision, the Third DCA denied the claim as follows:

1. *Due Process*

"'"[D]elay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay." [Citation.]'" (*Cowan, supra*, 50 Cal.4th at p. 430.)

"Prejudice may be shown by '"loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay."' [Citations.] And although the federal constitutional standard for what constitutes sufficient justification for delay is unclear [citation], [the California Supreme Court has] noted that 'the law under the California Constitution is at least as favorable for defendant in this regard' as federal law [citation]. Accordingly, ... we apply California law here." (*Cowan, supra*, 50 Cal.4th at pp. 430–431.) "Under the California standard, 'negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process. This does not mean, however, that whether the delay was purposeful or negligent is irrelevant.' [Citation.] Rather, 'whether the delay was negligent or purposeful is relevant to the balancing process. Purposeful delay to gain an advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation.' [Citation.] The justification for the delay is strong when there is 'investigative delay, nothing else.' [Citation.]" (*Cowan, supra*, 50 Cal.4th at p. 431.) "'The statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges,'...." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250.)

"We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them [citation]." (*Cowan, supra*, 50 Cal.4th at p. 431.)

2. *Speedy Trial*

Under the *state* Constitution, the right to a speedy trial attaches with the filing of the felony complaint, which in this case was April 2004. (*People v. Martinez* (2000) 22 Cal.4th 750, 754 (*Martinez*).) Where review is sought after trial, the defendant must show prejudice. (*Id*. at p. 755.) "Under the *state* Constitution's speedy trial right, ... no presumption of prejudice arises from delay after the filing of a complaint and before arrest or formal accusation by indictment or information [citation]; rather, in this situation a defendant seeking dismissal must affirmatively demonstrate prejudice [citation]." (*Id*. at p. 755, original italics.) In reviewing application of facts found to the legal question whether the defendant was denied his right to a speedy trial, our review is de novo. (*People v. Cromer* (2001) 24 Cal.4th 889, 894.)

7

The *federal* constitutional right to a speedy trial allows prejudice to be presumed if the delay is "uncommonly long," but the federal right does not attach until the defendant is arrested or the information is filed. (*United States v. Marion* (1971) 404 U.S. 307, 320 [30 L.Ed.2d 468]; *People v. Williams* (2013) 58 Cal.4th 197, 233; *Martinez, supra*, 22 Cal.4th at pp. 754–755.) Here, the federal speedy trial right did not attach until January 2010, when defendant was arrested, and defendant does not claim any prejudicial delay after his arrest.

B. *Background*

In June 2011, before trial, defendant moved to dismiss the case for delay in prosecution based on the seven-year delay between commission of the crimes and his arrest. The prosecutor opposed the motion. The trial court conducted evidentiary hearings before and after trial.

At the pretrial hearing, defendant testified and admitted he fled California in February 2002 in violation of parole. He went to Virginia, where he was arrested in March 2002, released in early 2003, rearrested in the summer of 2003, pleaded guilty to nine counts of fraudulently using bank notes, and was sentenced to six years in prison in Virginia.

In California, the prosecutor filed the complaint in April 2004 and obtained an arrest warrant in May 2004, naming defendant as Gerald H. Wise and giving a Virginia jail as defendant's last known address. While incarcerated in Virginia, defendant learned of the California case and in December 2004 wrote to the Calaveras County District Attorney's office, asserting his Sixth Amendment right to a speedy trial on the California charges (which had not yet attached) and stating he would not contest extradition. The response was that his request failed to comply with statutory requirements. Defendant claimed the Virginia prison denied him access to California law.

After defendant's Virginia prison term ended in September 2009, he was kept confined pending word from California but was then released on his own recognizance. A California arrest warrant issued in October 2009, using both surnames, Wise and Stolp. Defendant testified he was served with the arrest warrant on December 28, 2009, when he showed up for a hearing in a Virginia court, and he was arrested on the California warrant in January 2010. The prosecutor filed an information on February 25, 2010, and an amended information in March 2011.

Defendant made various motions to dismiss or set aside the information for delay. In opposition, the prosecutor submitted her own declaration attesting 18 burglaries had been reported in the same area during January, February, and March of 2002. The District Attorney's office received a police report in June 2002 on some of the burglaries, requested additional reports, and requested followup in February 2003. In early 2004, the prosecutor requested additional followup by a prosecution investigator before filing the complaint. In September 2009, defendant was due to be released from the Virginia prison. Because defendant would not waive extradition, the prosecutor sought a governor's warrant, which was granted on November 2, 2009. The law and motion judge denied defendant's dismissal motion. Defendant's attempt to obtain dismissal on the ground of the three-year statute of limitations (§ 801) was also denied. For limitations purposes, the prosecution was commenced when the 2004 arrest was issued, plus the limitations period is tolled for up to three years if the defendant is out of the state. (§§ 803–804.)

8

In June 2011, defendant filed a motion to dismiss for delay in prosecution, asserting the prosecution knew in May 2002 that (1) the police investigation revealed defendant's fingerprints were at one crime scene; (2) defendant had not kept in contact with his parole officer; and (3) defendant was in custody in Virginia.

At the pretrial hearing on the dismissal motion, defendant argued he was prejudiced by the delay between the 2002 burglaries and his arrest seven years later. And he argued there was no legitimate justification for the delay, "particularly" from 2004 forward. He assertedly tried to gather evidence to show he left California before February 5, 2002, the date a pest control technician performed routine service at victim Smith's home without noticing any sign of a break-in. Since the burglaries appeared to be the work of a single perpetrator, defendant thought this would exonerate him. A defense investigator testified defendant said he left California in early February 2002 but did not recall the exact date, and the investigator was unable to gather supporting evidence because business records such as airline records and airport parking records were unavailable, and witnesses such as the pest control technician could not remember.

The prosecutor argued defendant failed to show prejudice.

The trial court issued a written interim ruling in July 2011, finding "the facts regarding a showing of prejudice have not been fully developed. There are uncontacted witnesses who could potentially corroborate defendant's account of when he left the State of California." The court denied the dismissal motion without prejudice to revisit the matter after trial. Defendant noted his motion had also asserted intentional delay by the People, relieving him from having to show prejudice. The trial court declined to dismiss on that ground.

After the jury returned its verdicts on November 16, 2011, the court held another evidentiary hearing on the dismissal motion. Defense counsel filed a declaration attesting he asked Reno airport security when the Subaru was parked at the airport but was told the information was unavailable. He obtained defendant's employment records, but they did not show the date defendant cashed his last paycheck. He contacted the bank where defendant cashed the check but was told they destroy records after seven years. The defense did not directly contact the woman who wired defendant money, because she had been victimized by defendant and was terrified of him. The defense contacted her through a third party, but she did not remember when defendant arrived in Virginia and thought it was in January 2002. The defense investigator said Rowe did not return phone calls, so the investigator suggested contacting his mother, but defense counsel said Rowe was in Australia (as the prosecutor apparently thought), and was not needed.

The prosecution adduced evidence they easily reached Rowe, who said he spent less than a day in Australia due to a visa problem. The prosecutor also easily reached Rowe's girlfriend, who said she did not remember making flight arrangements for defendant and would have remembered had she done so, because he was a "criminal type," and she did not like criminal types and would not have wanted to help him.

The trial court, citing case law that faded memory may suffice for prejudice, asked the prosecutor if she wanted to present justification for the delay. She said, "Not at this time" and asserted the court had to make a finding of prejudice before the burden shifted to the People. The trial court retorted even the slightest showing of

9

prejudice could shift the burden, and "I really think for the purpose of the record, I would like to have the People's justification so we don't have to come back later and do this." The prosecutor explained she was prepared only on the issue of prejudice, and "the People are not prepared to offer justification at this time."

In arguing the question of prejudice, the prosecutor noted the defense did not diligently pursue supporting evidence, as shown by their asserted inability to contact defendant's friend, Rowe, whereas the prosecution had quick success in contacting him.

On November 21, 2011, the trial court issued a written ruling denying defendant's dismissal motion. The court noted defendant admitted at the hearing of the motion that he was released on parole on January 17, 2002, stole a car, spent several days in the Peterson home, and then absconded from parole, flying out of Reno to Virginia. The ruling stated in part:

"The defendant argues that he has been prejudiced by the delay in bringing his case to trial since evidence of the precise date in early February of 2002, circa February 2nd, when he fled the State of California cannot be corroborated due to the lack of records which have been purged and memories that have faded. The court finds the defendant has not made a sufficient showing of prejudice. Even assuming the defendant actually left ... California in early February of 2002, he was in the Arnold area within the alleged times of all of the burglaries with the exception of Count II, (on or about and between February 3, 2002, and February 11, 2002). The court notes that Count II was dismissed on the People's motion following a mistrial.

"Assuming arguendo that the defendant has made a sufficient showing to shift the burden to the People to show a legitimate justification for the delay, that burden has been met. The delay in this case was primarily occasioned by the defendant's flight from ... California and his commission of additional crimes in the State of Virginia. As a result, he was in and out of custody and transferred between various penal institutions in the State of Virginia.

"In balancing the competing interests at this juncture, the court cannot overlook the overwhelming evidence of defendant's guilt presented at trial and the jury's guilty verdicts as to Counts I, III, and IV."

C. *Analysis*

On appeal, defendant refers to the "seven-year delay" between 2002 and 2009 without differentiation between the different rights asserted.

We disregard defendant's reliance on cases involving the federal speedy trial claim, because it was not triggered until defendant was arrested in 2009, and defendant does not claim or demonstrate prejudice or unjustifiable delay after that point. Elimination of the federal speedy trial claim eliminates defendant's ability to rely on a presumption of prejudice, and he must affirmatively demonstrate prejudice. (*Martinez, supra*, 22 Cal.4th at p. 755.)

As to the due process claim for the period between the 2002 commission of the crimes and the 2004 filing of the complaint, defendant fails to show prejudice. He fails to show the two-year period left him unable to gather evidence upon learning of the charges in 2004. He fails to show he attempted to gather evidence in 2004. Moreover, the delay was justified. Although defendant's fingerprints were

10

identified in April 2002 and there was probable cause to charge defendant on several counts by June 2002, the record shows an ongoing investigation of 18 burglaries that were ultimately winnowed down to the four counts charged against defendant. Defendant does not argue or show the investigation was deliberately slow in order to prejudice him. The record shows nothing more than investigative delay, which is strong justification for delay. (*Cowan, supra*, 50 Cal.4th at p. 431.)

As to the state speedy trial claim for the period between 2004 and 2009, we see no basis for reversal. Defendant focuses on his asserted inability to prove his claim that he left California before February 3, 2002. But all three burglaries of which defendant was convicted could have occurred before February 3rd.

Defendant argues the prosecution used the telephone calls as evidence that the burglaries were committed by the same person. Since the last of those calls were made on February 3rd (8:24 p.m. from Martinez's phone, 3:24 p.m. from Mugford's phone), defendant argues he could have cast reasonable doubt as to his identity as the perpetrator had he been able to show he left California by that date. However, defendant did not initially claim that date. At the pretrial hearing, the defense investigator testified he spoke with defendant, who said he left California in early February 2002 but did not know what date. Even though the defense knew before trial that the last phone calls were made February 3rd, defendant testified at the pretrial hearing that "we were trying to establish that I was gone prior to February 5th"—the date of the pest control service.

Proving he left before February 5th would not help defendant, because there is no evidence the pest control technician should have noticed signs of forced entry. Forced entry was by broken glass on an upper deck with closed vertical blinds. The technician merely sprayed the perimeter from as much as 30 feet away.

Proving he left on February 3rd would not help defendant, because the last phone call was at 8:24 p.m. on February 3rd, and therefore defendant could have made that call and then left for the airport. He did not testify what time of day his flight left. Defendant's presence in the crime area on February 2nd was established by the market surveillance video. Moreover, the phone records would not exonerate defendant in any case, because there was a rash of burglaries of the unoccupied vacation homes in the area, not all of which were charged against defendant. He left behind the list of "900" numbers, and there was no evidence he secured the home when he left.

Additionally, the defense did not even try to contact the woman who wired money to defendant until after the trial began. The defense then communicated with her through a third person, because defendant victimized her, and she is hostile toward and terrified by defendant—circumstances not the fault of the prosecution.

Thus, defendant failed to show prejudice.

Even assuming defendant showed prejudice sufficient to shift the burden to the prosecution to justify the delay, defendant fails to show grounds for reversal. Although the prosecution did not present evidence as to why it declined to extradite defendant sooner, the trial court properly found there was justifiable delay because defendant fled California. (*People v. Perez* (1991) 229 Cal.App.3d 302, 308 [though not an absolute bar to a speedy trial claim, flight to avoid prosecution is a factor to be considered].) Defendant argues the delay was unjustified, because California authorities knew his whereabouts in the Virginia prison, and he even urged them to bring him to trial. The Attorney General does

not argue inability to extradite defendant earlier, and we therefore do not rely on the Virginia incarceration itself as justification for the five-year delay in California. By the same token, however, though the California authorities knew where defendant was in 2004, defendant in 2004 knew about the California burglary charges against him and, though incarcerated, could have undertaken to pin down evidence of when he left California. He did not testify to any such efforts. Contrary to defendant's contention, the fact the prosecution declined to extradite him in 2004 does not, in itself, suffice to show purposeful delay to weaken the defense. Thus, any balancing of prejudice against delay would not weigh in defendant's favor. Moreover, there was overwhelming evidence of defendant's guilt on the three counts of which he stands convicted. His DNA was found in the Peterson and Mugford homes, and he admitted staying at the Peterson home for several days. The receipt found in the home was from a February 2nd transaction captured by surveillance video showing a person who appeared to be defendant. Moreover, a number of items stolen from the Smith home were found in the Peterson home.

Defendant cites *Dickey v. Florida* (1970) 398 U.S. 30 [26 L.Ed.2d 26], which found a speedy trial violation under the federal Constitution where a person incarcerated in federal prison sought a speedy trial on state charges in Florida, and the state prosecutor let eight years lapse before bringing him to trial. Dickey noted that, upon demand of the accused, the state had a constitutional duty to make a diligent and good faith effort to secure his presence from the custodial jurisdiction and afford him a trial. (*Id*. at pp. 36–37.) However, we have explained the federal speedy trial did not attach until defendant's arrest in 2009, at which point he was no longer incarcerated in Virginia, and he makes no claim of prejudice or unjustified delay after his arrest.

Defendant also cites *People v. Mirenda* (2009) 174 Cal.App.4th 1313. There, however, the delay was 25 years, and the defendant showed prejudice, e.g., death of the sole independent witness. (*Id*. at pp. 1331–1332.) The appellate court upheld the trial court's determinations that delay in prosecution was justified until 1982, when the California authorities found the defendant in Pennsylvania, but the delay in prosecution between 1982 and 2007 was not justified under the circumstances of the case. (*Ibid*.) The circumstances included an admission by the prosecutor that nothing was done, and the prosecution not only declined to extradite the defendant but also changed the arrest warrant to "California only" thereby preventing execution of the warrant outside of the state. (Id. at p. 1333.)

We conclude defendant fails to show grounds for reversal.

Stolp, 2015 WL 67037, at *3–l.)

b. Legal Standard

"[A] speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution." Barker v. Wingo, 407 U.S. 514, 515 (1972). The "right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." Id. (citing Kloper v. North Carolina, 386 U.S. 213 (1967). In Barker, the Supreme Court identified four factors in determining whether a due process violation has occurred: 1) the length of delay; 2) the

12

reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. Id. at 530. However, the Supreme Court stated in Barker that "[w]e hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." Id. at 529. Thus, the Ninth Circuit held that "when the defendant seeks to avoid detection by American authorities and any post-indictment delay can be attributed to him, he waives the right to a speedy trial." United States v. Sandoval, 990 F.2d 481, 483 (9th Cir.1993) (internal quotations omitted).

As for California law, Cal. Penal Code § 1381 *et seq.* provides the statutory framework to ensure speedy trials for defendants. However, it is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

c. Analysis

Petitioner's due process claim is meritless, because as noted by the Third DCA, the right was not triggered until Petitioner's arrest in 2009. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." United States v. Marion, 404 U.S. 307, 320 (1971). The Supreme Court has declined to extend the reach of the speedy trial provision to the period prior to arrest. Id. at 321. As to the period of time after Petitioner's arrest in 2009, he does not claim or demonstrate any prejudice or unjustifiable delay. Stolp, 2015 WL 67037, at *6; Doc. 1 at 5.

With regard to Petitioner's claim that his state speedy trial rights were violated, as previously noted, federal habeas relief is unavailable for violations of state law. 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67. Therefore, Petitioner's claim should be rejected.

2. Ineffective Assistance of Appellate Counsel

Petitioner claims he received ineffective assistance from his appellate counsel. He does not state any basis for this claim in his federal petition. In his state court petitions, Petitioner

alleged his appellate counsel was ineffective in failing to raise a claim regarding violations of the state and federal statute of limitations. In rejecting this claim, the California Supreme Court summarily denied it with citation to In re Robbins, 18 Cal.4th 770, 780 (1998). Respondent argues that the claim is procedurally defaulted and the Court agrees.

      a. Procedural Default

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86–87 (1977). In turn, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001); see Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."). This concept has been commonly referred to as the procedural default doctrine. This doctrine of procedural default is based on concerns of comity and federalism. Coleman, 501 U.S. at 730-32. If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park, 202 F.3d at 1150.

The mere occurrence, however, of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus. In order for the procedural default doctrine to apply and thereby bar federal review, the state court determination of default must be grounded in state law that is both adequate to support the judgment and independent of federal law. Ylst, 501 U.S. at 801; Coleman, 501 U.S. at 729-30. Put another way, the procedural default doctrine will apply only if the application of the state procedural rule provides "an adequate and independent state law basis" on which the state court can deny relief. Park, 202 F.3d at 1151 (quoting Coleman, 501 U.S. at 729-30).

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse, 244 F.3d at 704 (citing Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (quoting Coleman, 501 U.S. at 735). "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.") (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)). Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'" Id. at 577 (quoting Morales, 85 F.3d at 1392).

In this case, the California Supreme Court's citation to In re Robbins reflects that the habeas petition was denied because it was deemed untimely. Walker v. Martin, 562 U.S. 307, 313 (2011) ("A summary denial citing . . . Robbins means that the petition is rejected as untimely."). In Walker, the Supreme Court concluded that such a dismissal on timeliness grounds under California law represented an adequate and consistently applied independent state law bar such that the petitioner was precluded from bringing his federal claims in federal court. Id. at 318-19; see Coleman v. Thompson, 501 U.S. 722, 729 (1991). Thus, the claim is procedurally defaulted unless Petitioner can show cause and prejudice, or that a fundamental miscarriage of justice occurred. He fails to do so, and the claim should be dismissed as procedurally barred.

      b. <u>Legal Standard and Analysis</u>

Even if the Court could consider the claim, it is meritless. Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469

15

U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

In challenges to the effective assistance of appellate counsel, the same standards apply as with claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527 (1986). In Robbins, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id. As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable. Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980); see also Gillhan v. Rodriguez, 551 F.2d 1182 (10th Cir. 1977).

In this case, the offenses were committed in January and February of 2002. A felony complaint was filed in Calaveras County Superior Court in April of 2004. An arrest warrant based on the complaint was issued in May 2004. This was well within the three-year limitations period set forth in Cal. Penal Code §§ 801, 804. Appellate counsel cannot be faulted for failing to raise a meritless argument. Gustave, 627 F.2d at 906. The claim should be rejected.

3. Statute of Limitations

Petitioner next contends that both the federal and state statutes of limitations were violated. He raised this claim in habeas petitions before the state courts. The California Supreme Court denied the claim as untimely with citation to In re Robbins, 18 Cal.4th at 780. Respondent contends that, like the previous claim, this claim is procedurally defaulted. The Court agrees for the same reasons stated in the previous ground for relief. Moreover, the claim is without merit.

First, federal habeas relief is unavailable for Petitioner's claim that California's statute of limitations was violated. An error of state law is not cognizable in a federal habeas action. Estelle, 502 U.S. at 67-68. Second, as pointed out by Respondent, Petitioner was not charged with any federal offenses. Therefore, the federal statute of limitations is inapplicable. Thus, the claim should be denied.

4. Interstate Agreement on Detainers

In his last claim, Petitioner contends that there was a "violation of the remedial provisions of the Interstate Agreement on Detainers Act" (IAD). This claim was also raised in state habeas petitions, and denied as untimely by the California Supreme Court. Respondent argues that the

claim is procedurally defaulted, and for the same reasons previously discussed, the Court agrees. In any case, the claim is without merit.

    a. <u>Legal Standard</u>

The Interstate Agreement on Detainers Act ("IAD") governs the disposition of charges between different jurisdictions. The Supreme Court provides this summary of the IAD:

> In 1970 Congress enacted the Interstate Agreement on Detainers Act, 18 U.S.C. App., pp. 1395-1398 (1976 ed.), joining the United States and the District of Columbia as parties to the Interstate Agreement on Detainers (Agreement). The Agreement, which has also been enacted by 46 States, is designed "to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Art. I. It prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. In either case, however, the provisions of the Agreement are triggered only when a "detainer" is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; to obtain temporary custody, the receiving State must also file an appropriate "request" with the sending State.

<u>United States v. Mauro</u>, 436 U.S. 340, 343-44 (1978).

"A detainer is" defined as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." <u>Id</u>. at 359. According to the IAD, the warden, commissioner of corrections or other official having custody of the prisoner must promptly inform him of any detainer lodged against him and also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based. I.A.D., Art. III(c). If a prisoner wishes to request final disposition, he must provide a "written notice and request for final disposition . . . to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." I.A.D., Art. III(b). The official must also include "copies of the prisoner's written notice, request, and the certificate." I.A.D., Art. III(d). Once notice has been delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, the prisoner must be brought to trial within one hundred and eighty days. I.A.D., Art. III(a). If the prisoner is not brought to trial within that time period, "the

court of the jurisdiction where the indictment, information, or complaint is pending shall dismiss the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." I.A.D., Art. V(c).

    b. <u>Analysis</u>

In this case, Petitioner fails to demonstrate a violation of the IAD. Petitioner committed the crimes in California in 2002. He then fled to Virginia and was arrested on other charges that same year. (LD 8 at 303.) He was sentenced to a prison term, released in 2003, and remained in Virginia. (LD 8 at 304-05.) He was rearrested in 2003 and began serving another prison sentence in Virginia. (LD 8 at 305-07.) On April 28, 2004, the Calaveras County District Attorney filed a complaint, and an arrest warrant was issued on May 13, 2004. (LD 1 at 145-47.) Petitioner stated that he wrote to the Calaveras County District Attorney in December of 2004 "assert[ing] his right to a speedy trial under the 6th Amendment to the Constitution." (LD 1 at 42, LD 8 at 309.) The district attorney responded to Petitioner's letter stating that his request "attempting to invoke the speedy trial rights does not comply with statutory requirements and will not be honored." (LD 1 at 41.) Petitioner did nothing further and was arrested in 2009 on the California warrant. (LD 8 at 313-14, 316.)

Based on Petitioner's representations, it is clear he did not comply with the statutory requirements. There is no showing that he ever provided proper notice to the warden or official in custody as required by the IAD. He also fails to show that the Calaveras County Superior Court was ever notified. He further fails to provide any documentary proof of his notice demonstrating that he complied with the requirements of the IAD. Thus, he fails to show a violation of the IAD and the claim should be denied.

**IV.    RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **March 28, 2018**                 /s/ Jennifer L. Thurston
                                           UNITED STATES MAGISTRATE JUDGE